### HUFF v. SELBER.

(District Court, W. D. Louisiana. Shreveport Division. December 31, 1925.)

No. 1535.

1. **Constitutional law ⬯46(2)—Court entitled to notice issue, though not raised by formal plea of plaintiff.**

Court *held* entitled to notice issue whether Const. La. 1913, art. 320, was invalid for having exceeded limitations contained in call for convention, in view of Code Prac. La. art. 329, though issue was not raised by formal plea of plaintiff in response to plea based thereon, where it was urged by plaintiff in his brief.

2. **Constitutional law ⬯8—Constitutional provision held invalid, as beyond powers of convention.**

Const. La. 1913, art. 320, *held* invalid in so far as it attempts to restrict activities of Legislature in enlarging powers and duties of fire marshal, as being ultra vires powers conferred on convention, in view of Louisiana Act No. 1 of 1913.

3. **Statutes ⬯64(12), 110½(4)—Statutes relating to fire escapes not violative of constitution in that objects not stated in title, and may stand, though provisions as to state fire marshal are unconstitutional.**

Louisiana Acts No. 171 of 1914 and No. 276 of 1918, relating to liability for failure to provide fire escapes, are not violative of Const. La. 1913, art. 31, requiring objects to be stated in title, and may stand, even if provisions as to duties of state fire marshal are unconstitutional.

4. **Constitutional law ⬯212—Health ⬯21—Fire escape regulations held not discriminatory as to boarding houses.**

Louisiana Acts No. 171 of 1914 and No. 276 of 1918 *held* not violative of Const. La. 1913, art. 6, or Const. U. S. Amend. 14, as being discriminatory, in that boarding houses having more than 15 sleeping rooms above basement are required to be provided with fire escapes, while hotels, lodging houses, and apartments are not subject to same requirement.

5. **Landlord and tenant ⬯169(3)—Petition in action for damages against owner of building destroyed by fire for failure to provide proper fire escapes held to state a cause of action.**

Petition in action by lessee's guest for damages against owner of boarding house destroyed by fire, in which plaintiff suffered personal injuries, due to defendant's negligence in not complying with state laws as to fire escapes, etc., *held* to state a cause of action.

At Law. Action by Wm. F. Huff against Chas. Selber, in which defendant filed pleas of unconstitutionality of statutes and no cause of action. Pleas overruled.

Robertson & Gibbs, of Shreveport, La., for plaintiff.

Cook & Cook, of Shreveport, La., for defendant.

DAWKINS, District Judge. Plaintiff seeks to recover damages of the defendant as the owner of a building destroyed by fire, in which he is alleged to have suffered personal injuries, due to certain acts of negligence of defendant in not complying with the laws of the state with respect to fire escapes, etc. Defendant has filed pleas of unconstitutionality of said statutes and of no cause of action.

It is contended by the defendant that the said acts of the Legislature of Louisiana, Nos. 171 of 1914 and 276 of 1918, were and are unconstitutional for the following reasons:

(1) That they "enlarge and extend the duties, powers and functions of the state fire marshal, and therefore contravene article 320 of the Constitution of 1913."

(2) "That both delegate to the state fire marshal legislative duties and functions, and therefore violate article 21 of the Constitution of 1913."

(3) "That both acts violate article 31 of the Constitution of 1913, in that the objects are not stated in the title, and therefore in that each has more than one object."

(4) "That they violate article 6 of the Constitution of 1913 and the Fourteenth Amendment of the Constitution of the United States, in that they are unreasonable, discriminatory, and take the property of the defendant without due process of law."

The Constitution of 1913, in article 320, declares:

"The office of fire marshal of the state of Louisiana as created by existing laws is hereby recognized. His compensation, jurisdiction, powers and duties shall be prescribed by the General Assembly, provided that until action by the General Assembly, the powers, duties, compensation and functions of said fire marshal shall remain as fixed by law, but the General Assembly shall have no power to extend these duties, powers and functions beyond those now specified by Act 122 of 1904 as amended by Act 152 of 1906 and Act 143 of 1910."

[1] In the course of the oral argument it was suggested by the court that this provision of the Constitution of 1913 might itself be invalid, for having exceeded the limitations contained in the call for the convention of that year, which were in effect ratified by the vote of the people authorizing it to be held. But it is said that the court is without right to notice this issue, without it having been raised by formal plea of the plaintiff. However, the Code of Practice of Louisiana declares that there shall be no replication to the answers of defendants, and the plaintiffs may urge anything in response to such pleadings. Garland's C. P. (4th Ed.) art. 329, and authorities thereunder.

Plaintiff has urged invalidity of this provision of the Constitution of 1913 in his brief, although first suggested by the court, and while the question of unconstitutionality has not been raised by special plea, it is properly a defense to the claims of plaintiff, based upon the alleged invalidity of the statutes in question, and I think the rule of the Code of Practice is equally as applicable as it would have been had the matter been raised in the answer.

The act (No. 1 of 1913) calling the convention, which was submitted to and ratified by the people, declares:

"The said convention shall have full power to frame and adopt, without submission to the people, a new Constitution for the state: Provided, however, that the said convention shall be and is hereby prohibited from enacting, ordaining or framing any article or ordinance—

"a.  *  *  *

"b.  *  *  *

"c. Changing the provisions of existing laws touching, relating to, or in any manner affecting the following subjects:

"1.  *  *  *

"2.  *  *  *

"3.  *  *  *

"4.  *  *  *

"5. The term of office, duties, or compensation of any existing officer."

It is argued that article 320 did not "change" the laws governing the fire marshal, but merely made it impossible for the Legislature to enlarge his duties. Such contention could as well have been made had the Constitution of 1913 prohibited the law-making body from imposing further duties or powers upon the Governor, or from conferring additional jurisdiction upon the courts, or from increasing the salaries of officials, such as the members of the Supreme Court, as to which there was no limitation in the Constitution of 1898. The law, as it existed (and the Constitution of 1898 was as much the law of the state as any statute), put no such limitation upon the Legislature; yet provisions of the kind suggested unquestionably would have changed the constitutional law "touching, relating to," and "affecting" the "duties" and "compensation" of those officers to the extent suggested, in the face of the prohibition contained in the call of the convention. This restriction has been uniformly held by the Supreme Court of Louisiana to have deprived the convention of the power to adopt measures "touching" upon those subjects. State v. American Sugar Refinery, 137 La. 407, 68 So. 742; Foley v. Dem. Com., 138 La. 220, 70 So. 104; Hayne v. Assessor, 143 La. 714, 79 So. 280.

[2] My conclusion is that article 320, in so far as it attempted to restrict the activities of the Legislature in enlarging the powers and duties of the fire marshal, was ultra vires the powers conferred upon the convention, and therefore invalid. This disposes of the first two grounds of attack upon the constitutionality of the acts of 1914 and 1918.

[3] As to the third attack above quoted: The same question appears to have been passed upon by the Supreme Court of Louisiana in the case of Dotson v. Louisiana Central Lumber Co., 144 La. 78, 80 So. 205. In the syllabus, which is supported by the text, it is said:

"Under Act No. 171 of 1914, §§ 1–4, entitled 'An act for the safety of persons from fire in certain buildings, by providing fire escapes,' etc., section 4 thereof making an owner willfully violating or refusing to comply therewith liable for damages for death resulting from fire, is germane to the objects covered by the title, within Const. art. 31."

However, if it should be held that article 320 was valid, and the acts of 1914 and 1918 were unconstitutional, so far as the duties which the Legislature attempted to confer upon the fire marshal were concerned, I think the statutes could stand as valid legislation with those provisions eliminated. As hereinbefore indicated, the Supreme Court has held in the Dotson Case that the law was self-operative, without the aid of any act on the part of the labor commissioner or fire marshal, and, if this is correct, then it could stand with the duties imposed upon both of these officers omitted. It is true that the title declares that the labor commissioner

shall be charged with the duty of enforcing the act, "under the supervision of the fire marshal," and in section 2 it is provided that the fire escapes shall be constructed "according to specifications to be issued or approved by the state fire marshal"; yet the connection of the latter officer with the enforcement of the law is declared to be in section 4 "to better secure compliance with the provisions of the foregoing sections. * * * "

The latter section then requires submission to the fire marshal of designs and specifications for the building or adapting of structures already erected to the purposes covered by the law. Hence, if these provisions were eliminated, the statutes could operate fully, and I think the Legislature would have passed them, even if all reference to the fire marshal had been omitted.

In any event, the court in the Dotson Case also held that the act of 1914, which was similar in these respects to the one of 1918, did not create a cause of action, but merely recognized one which already existed under article 2315 of the Revised Civil Code, and that both the penal clause and the one recognizing the civil liability were germane to the main object of the law, to provide for the safety of persons from fire. [4] Neither do I think the law is discriminatory. The Legislature has classified the several kinds of buildings as to which different regulations apply, and, for reasons which it found sufficient, required fire escapes in some of three stories and in others of four or more; whereas, in the case of boarding houses, it required all such as have more than 15 sleeping rooms above the basement to be provided with such escapes. The several requirements are applicable to any one operating a business of a particular class. There are distinctions between hotels, lodging houses, apartment hotels, and boarding houses. Webster defines them as follows:

Hotel: "A house for entertaining strangers or travelers; an inn or public house of the better class."

Lodging house: "A place of rest or of temporary rest, or of temporary habitation, especially a sleeping apartment."

Apartment: "A room in a building; the division in a house separated from others by partition; a set or suite of rooms."

Boarding house: "A house in which boarders are kept; to obtain meals, or meals and lodging statedly for compensation; as 'he boards at the hotel.'"

It was probably considered that hotels and lodging houses would, as a rule, be operated in safer buildings, built or designed for that purpose; that in the case of apartment hotels the several apartments would be cared for by the occupants themselves, who would exercise more care in the matter of fire, whereas in boarding houses the boarders would have to intrust their safety entirely to the operators of such places, both as to sleeping and food, and for longer periods of time, and in many instances, such houses would be operated in cheaper and more inflammable buildings, more exposed to fire hazards than was true of hotels, apartments, and lodging houses. If such was the idea of the Legislature, the courts cannot say that it was altogether without reason, and, if reasonable, then it acted within its proper police power when making the distinction. Orient Insurance Co. v. Daggs, 172 U. S. 562, 19 S. Ct. 281, 43 L. Ed. 552, and authorities cited; 11 C. J. verbo "Class Legislation," and authorities cited in footnote.

[5] The petition I think clearly states a cause of action. Not only does it charge the failure to provide fire escapes, which made it impossible for the plaintiff to escape without injury, but it alleges specifically an act of negligence in the failure to repair, after notice, a defective wiring in the building, which it is claimed started the fire. It is contended that the duty was upon the lessee of the boarding house to make these repairs; that he did not do so, and was guilty of contributory negligence, which would prevent him from recovering of the owner of the building; and that the plaintiff, being a guest of the lessee and in the premises as an invitee, can claim no greater rights than the tenant. However, I think the right of the plaintiff to recover under the circumstances alleged in the petition, if supported by proof, is well settled by recent decisions of the Supreme Court of Louisiana. Davis v. Hochfelder, 153 La. 187, 95 So. 598; Breen v. Walters, 150 La. 578, 91 So. 50; Landry v. Monteleone, 150 La. 546, 90 So. 919.

For the reasons assigned, the plea of unconstitutionality and exception of no cause of action are overruled.